<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GOVERNMENT EMPLOYEES INS. CO., GEICO INDEMNITY CO., GEICO GENERAL INS. CO. and GEICO CASUALTY | : : : : : : | Civil Action No. 14-8071 |
| Plaintiffs, | : : | |
| v. | : : | |
| TRI- COUNTY NEUROLOGY AND REHABILITATION, LLC, NABIL YAZGI, M.D., and THOMAS SENATORE, D.C. | : : : : | **OPINION** |
| Defendants. | : : | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court by way of Defendants Tri-County Neurology and Rehabilitation, LLC ("Tri-County"), Nabil Yazgi, M.D. ("Dr. Yazgi"), and Thomas Senatore, D.C. ("Dr. Senatore") (collectively, "Defendants") Motion to Dismiss. Dkt. No. 23. Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co. and GEICO CASUALTY (collectively "GEICO" or "Plaintiffs") oppose the motion. Dkt. No. 25. The parties appeared before the Court on November 30, 2015 for oral argument. For the reasons set forth on the record and expressed below, the Court **GRANTS** Defendants' motion but grants Plaintiffs leave to re-plead certain claims.

**I.   BACKGROUND**

GEICO, a Maryland corporation, is authorized to conduct business and issue automobile insurance policies in New Jersey. Compl., Dkt. No. 1, ¶ 10. Under New Jersey law, automobile insurers are required to provide Personal Injury Protection Benefits ("PIP Benefits") to Insureds.

1

Id. ¶ 19.  An insured can assign his or her right to PIP Benefits to healthcare services providers in exchange for those services, and a healthcare services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services.  Id. ¶ 20.  An insurer, such as GEICO, is only required to pay PIP benefits for reasonable, necessary, and appropriate treatment.  Id. ¶ 21.

Defendant Tri-County is a New Jersey professional limited liability corporation, which purports to have Dr. Yazgi, a licensed doctor, and Dr. Senatore, a licensed chiropractor, as its co-owners and sole members.  Id. ¶¶ 11-13.  This action arises out of GEICO's allegations that numerous pending and already-paid PIP claims made by Tri-County to GEICO are fraudulent due to one or more of the following defects: (1) Tri-County's "illegal" corporate practice structure, id. ¶¶ 32-43; (2) Tri-County's improper referral relationships, id. ¶¶ 44-49; (3) Dr. Yazgi's "miscoded" examinations, id. ¶¶50-114; and (4) Dr. Yazgi's "unnecessary" electrodiagnostic testing, id. ¶¶ 115-159.

On December 29, 2014, GEICO filed a Complaint seeking declaratory judgment against Tri-County that it is not obligated to pay more than $2,279,000 in purportedly fraudulent pending claims for medical services that Tri-County provided to GEICO's insureds because the services were "fraudulent" as stated above (Count One).  GEICO also seeks to recover $68,000 in allegedly fraudulent charges already paid in Counts Two through Six, which include: violation of New Jersey Insurance Fraud Prevention Act ("IFPA") against all Defendants (Count Two); violation of RICO, 18 U.S.C. 1962(c) against Defendants Yazgi and Senatore (Count Three); violation of RICO, 18 U.S.C. 1962(d) against Defendants Yazgi and Senatore (Count Four); common law fraud against all Defendants (Count Five); and unjust enrichment against all

Defendants (Count Six).  On April 20, 2015, Defendants moved to dismiss the Complaint in its entirety.  Dkt. No. 23.

## II.  LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.  ANALYSIS

### a.  Declaratory Judgment Claim (Count One)

In Count One, Plaintiffs seek a declaration that GEICO is not obligated to pay $2,279,000.00 in pending PIP claims submitted by Tri-County to GEICO.  Defendants contend that the disputes over these pending PIP benefits claims must be decided through New Jersey's statutorily mandated arbitration process, and that the declaratory.  The Court agrees.

The New Jersey statute governing the resolution of PIP claim disputes provides that:

> Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage . . . arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.

N.J.S.A. 39:6A-5.1(a). The statute provides that "[d]isputes involving medical expense benefits may include, but not necessarily be limited to, matters concerning:

> (4) the eligibility of the provider performing the treatment or service to be compensated under the terms of the policy or under regulations promulgated by the commissioner, including whether the person is licensed or certified to perform such treatment; (5) whether the disputed medical treatment was actually performed; . . . . (7) the necessity or appropriateness of consultations by other health care providers; (8) disputes involving application of and adherence to fee schedules promulgated by the commissioner; and (9) whether the treatment performed is reasonable, necessary . . . .

N.J.S.A. 39:6A-5.1(c). The statute also provides that "[a]ll decisions of a dispute resolution professional shall be binding." Id.

In considering the same statutory scheme, Judge Chesler in Gov't Emps. Ins. Co. v. MLS Med. Group LLC, No. 12-7281, 2013 U.S. Dist. LEXIS 171983 (D.N.J. Dec. 6, 2013) granted dismissal of a nearly identical claim for declaratory judgment brought by GEICO against another healthcare provider.[1] The court found that "[r]ather than a jurisdictional issue, Defendant's position that the dispute must be submitted to arbitration would appear to raise an argument that the declaratory judgment claim fails to plead a claim upon which this Court may grant relief." Id. at *14. The Court declined to entertain the claim based on abstention. The Court explained:

> [i]n any event, the question of whether the Court dismisses the claim under Rule 12(b)(1) or 12(b)(6) is largely academic. Even assuming there is a basis for subject matter jurisdiction over the declaratory judgment claim, the Court will, in its discretion, decline to exercise its power to adjudicate the claim for a declaratory judgment under 28 U.S.C. § 2201.

---

[1] Two other District Court cases have recently considered similar cases involving GEICO's allegations of fraudulent billing of other healthcare providers. See, e.g., Gov't Emples. Ins. Co. v. Korn, No. 14-5742, 2015 U.S. Dist. LEXIS 121754 (D.N.J. Sept. 14, 2015) (Irenas, J.); Gov't Emples. Ins. Co. v. Zuberi, No. 15-4895, 2015 U.S. Dist. LEXIS 133789 (D.N.J. Oct. 1, 2015) (Linares, J.). Neither case, however, addressed whether the court should decline to entertain the declaratory judgment issue and send the PIP claims to arbitration as mandated by New Jersey's statutory scheme.

Id. at *14-15 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995). The Court explained how "[t]he claim, though couched in the language of the Declaratory Judgment Act, at bottom requests that this Court disrupt the statutory scheme created by the New Jersey legislature mandating that disputes regarding claims for PIP benefits be decided through arbitration." Id. at *17. The Court, applying Burford abstention, concluded that "declining to entertain a claim arising under federal law that would interfere with this state statutory scheme is prudent course." Id. at *18 (citing Burford v. Sun Oil Co., 319 U.S. 315 (1943)).

The District Court's decision in MLS is consistent with New Jersey case law.[2] In State Farm Mut. Auto. Ins. Co. v. Molino, 289 N.J. Super. 406, 410 (App. Div. 1996), the court explained that "any 'dispute' concerning 'payment' of PIP benefits due 'pursuant to this act' is subject to binding arbitration at the claimant's option." The court held that the statute compels plaintiff to submit to binding arbitration the dispute over defendant's entitlement to certain PIP benefits. Id. Similarly, in State Farm Mut. Auto. Ins. Co. v. Sabato, 337 N.J. Super. 393, 394 (App. Div. 2001), the court explained that the language of the statute mandating PIP arbitration must be "read as broadly as the words themselves indicate, that statutory arbitrators are authorized to determine both factual and legal issues, and that coverage issues are to be decided by the arbitrator in the same manner as issues dealing with the extent of injury and the amount of

---

[2] Plaintiffs rely on a decision issued by the New Jersey Law Division, Allstate Ins. Co. v Lopez, 311 N.J. Super. 660 (Law Div. 1998) (granting motion to stay arbitration in case where insurer asserted that insureds, drivers, passengers, and health care providers, were part of an insurance fraud ring that had staged accidents to defraud insurer). The Court, in line with Judge Chesler in MLS, finds Lopez to be distinguishable. See MLS, 2013 U.S. Dist. LEXIS 171983, at *12-14; see also State Farm Mut. Auto. Ins. Co. v. Sabato, 337 N.J. Super. 393, 397 (App. Div. 2001). Lopez was a case with "434 defendants . . . . [i]nvolving what is believed to be part of the largest automobile accident fraud ring documented in United States history." 311 N.J. Super. at 662. The Law Division reasoned that the massive and conspiratorial nature of the fraud went beyond the question of fraud as it related to the occurrence of an underlying accident. Id. at 671-72. This case does not involve the same complexities as Lopez—it only involves three defendants, one healthcare facility, and fraud issues that are not overly complicated.

recovery." The Sabato Court held that threshold issues of whether coverage exists, including an insurer's fraud-based defenses, must be resolved in the mandatory arbitration proceedings. Id.

Judge Chesler's decision is also in line with the Third Circuit's decision in Chiropractic Am. v. Lavecchia, 180 F.3d 99 (3d Cir. 1999). In Chiropractic, a case involving New Jersey's no-fault automobile insurance law,[3] the Third Circuit upheld the decision of the district court to abstain on Burford grounds. 180 F.3d at 103. In concluding that abstention was appropriate, the Third Circuit noted that federal intervention would prevent New Jersey from maintaining a coherent regulatory policy. Id. The court found that "the Act and the regulations promulgated by the Commissioner represent a complex legislative and regulatory package designed to reform automobile insurance law in New Jersey, and that the courts of New Jersey are in the best position to consider the validity of the applicable regulations under state law . . . ." Id.

Based on these decisions, the Court is satisfied that Burford abstention is appropriate here. Burford abstention is designed to prevent federal courts from interfering with "a state's efforts to regulate areas of law in which state interests predominate and in which adequate and timely state review of the regulatory scheme is available." Chiropractic, 180 F.3d at 104 (citing Burford, 319 U.S. at 332-34 (1943)). Burford abstention is a two-step process. First, a court must determine whether timely and adequate state law review is available. Matusow v. Trans-Cnty. Title Agency, LLC, 545 F.3d 241, 247 (3d Cir. 2008) (quoting Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995)). Second, the court must determine "(i) whether the particular regulatory scheme involves a matter of substantial public concern; (ii) whether it is the sort of complex

---

[3] In Chiropractic, individual chiropractors and other professional organizations challenged, on constitutional grounds, several New Jersey regulations under the state's no-fault automobile insurance law. While the regulations at issue in Chiropractic are different than those in this case, both cases deal whether the Court should adjudicate claims involving New Jersey's no-fault automobile insurance statutory scheme.

6

technical regulatory scheme to which the Burford abstention doctrine usually is applied; and (iii) whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy." Hi-Tech Trans., LLC v. New Jersey, 382 F.3d 295, 304 (3d Cir. 2004).

First, the Court finds that timely and adequate state law review is available to the parties through the statutorily mandated arbitration of PIP claims set forth in N.J.S.A. 39:6A-5.1(a). Plaintiffs have not demonstrated the absence of such review.

Next, the Court turns to whether adjudication of the claim would interfere with New Jersey's no-fault insurance statutory scheme. First, the Court finds that the adjudication of PIP claims presents a matter of public concern. The New Jersey legislature has created a scheme that serves New Jersey drivers, their passengers, insurers, health care service providers and those who represent them. See Chiropractic, 180 F.3d at 105. The statutory provision governing PIP disputes is part of New Jersey's Automobile Insurance Cost Reduction Act, N.J.S.A. 39:6A-1 to -35, whose purpose is "to establish an informal system of settling tort claims arising out of automobile accidents in an expeditious and least costly manner, and to ease the burdens and congestion of the State's courts." N.J.S.A. 39:6A-24. Accordingly, the Act and regulations pertain to a matter in which the state has a substantial and important interest.

Next, in accordance with the Third Circuit's finding in Chiropractic, the Court finds that New Jersey's no-fault insurance scheme is the sort of complex regulatory scheme to which Burford abstention applies. See Chiropractic, 180 F.3d at 106 (discussing New Jersey's no-fault automobile insurance law under the Automobile Insurance Cost Reduction Act, N.J. Stat. Ann. § 39:6A-1.1 et seq.). As the Third Circuit explained, "[t]here can be no doubt that the Act and

regulations at issue here constitute a complex regulatory solution to the state's no-fault insurance problem." See Chiropractic, 180 F.3d at 106.

Finally, the Court finds that federal review would in fact interfere with New Jersey's efforts to establish and maintain its no-fault automobile insurance scheme. See id. ("We believe that 'the regulatory system [has] as a central purpose uniformity to achieve important local interests that would be frustrated by federal court review.'") (internal citations omitted)).

In accordance with MLS and Chiropractic, the Court finds that abstention under Burford is appropriate in this case. The Court will therefore decline to exercise jurisdiction over Plaintiffs' claim for Declaratory Judgment.[4]  Count One is dismissed.

### b. Counts Two through Six

In addition to seeking declaratory relief for the pending PIP benefit disputes, in Counts Two through Six, GEICO seeks to recover $68,000 in allegedly fraudulent charges.

### i. Collateral Estoppel

First, Defendants contend that Plaintiffs' claims in Counts Two through Six amounts to an attempt to re-litigate issues that were or could have been raised in PIP arbitration, and are therefore barred by the doctrine of collateral estoppel. Plaintiffs argue that none of the $68,000 that it seeks to recover was paid pursuant to an arbitration award but was paid voluntarily by GEICO in reliance on Defendants' fraudulent billing. This Court is satisfied that the application of collateral estoppel cannot be decided now.

---

[4] The Court also notes that the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA"), gives district courts "unique and substantial discretion" to exercise or decline to exercise jurisdiction over declaratory judgment actions. See Wilton v. Seven Falls Co., 515 U.S. 277 (1995); Maxum Indem. Co. v. Heyl & Patterson, Inc., No. 11-1111, 2011 U.S. Dist. LEXIS 102291 (W.D. Pa. Sept. 12, 2011) (declining to exercise jurisdiction over declaratory judgment action where insurance company sought declaration that insured not entitled to coverage, in connection with an arbitration proceeding). Because the Court finds Burford abstention to be appropriate in this case, it will not conduct an analysis of abstention under the DJA.

Judge Chesler rejected the same argument in MLS: "[a]t this stage of the litigation, and on the record presented, the Court cannot conclude that Defendant has met its burden of establishing the affirmative defense of collateral estoppel, as to the IFPA claim or any other claim for relief predicated on the already-paid PIP benefits, and that "[t]o establish that collateral estoppel bars any claim asserted by GEICO in this lawsuit, Defendant would, at a minimum, have to present evidence that the fraud issues on which GEICO bases its claims were actually

From the face of the Complaint, the Court cannot determine whether the claims were arbitrated; whether the arbitrator's decision was based on an actual finding concerning the alleged fraudulent scheme, billing practice, medical necessity of treatment or any other issues raised by Counts Two through Six. These issues call for a fact-intensive inquiry into the arbitration record on a claim-by-claim basis, and Defendants, at this stage, have not presented any evidence that would demonstrate that the fraud claims are barred by collateral estoppel.

### ii. Plaintiffs Fail to Plead their Fraud Claims in Counts Two through Six with Particularity

Counts Two through Six consist of claims against Defendants under the New Jersey Insurance Fraud Prevention Act ("IFPA") (Count Two), the civil RICO statute (Counts Three and Four); for common law fraud (Count Five), and for unjust enrichment (Count Six). Defendants contend that Plaintiffs fail to plead these fraud claims with particularity, as required by Rule 9(b). See MLS, 2013 U.S. Dist. LEXIS 171983 (dismissing without prejudice GEICO's IFPA claim, RICO claims, common law fraud claim, and unjust enrichment claim for failing to comply with Rule 9(b)). The Court agrees.

Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud over and above that required by Rule 8(a). In re Toshiba Am. HD DVD Mktg. & Sales Practices

Litig., No. 08-939, 2009 WL 2940081, at *8 (D.N.J. Sept. 11, 2009) (citing Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 500 (D.N.J. 2009)).  Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Plaintiffs may satisfy this requirement by pleading the "'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984)). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id.

### 1. IFPA (Count Two)

New Jersey enacted the IFPA in order "to confront aggressively the problem of insurance Fraud . . . [by] requiring the restitution of fraudulently obtained insurance benefits." N.J.S.A. l7:33A-2.  In relevant part, a person violates the IFPA if he or she:

> (1) Presents or causes to be presented any written or oral statement as part of, or support of or opposition to, a claim for payment or other benefits pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L. 1952, c. 174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
> (2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c.174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim . . . .

N.J.S.A. 17:33A-4(a).  Furthermore, a person violates the IFPA if he "knowingly assists, conspires with, or urges any person or practitioner to violate" any of the IFPA's provisions, id. l7:33A-4(b), or "if, due to the assistance, conspiracy or urging of any person or practitioner, he

10

knowingly benefits, directly or indirectly, from the proceeds derived from a violation" of the IFPA, id. l7:33A-4(c).  "Any insurance company damaged as a result of a violation of any provision of [the IFPA] may sue therefore in any court of competent jurisdiction to recover compensatory damages," id. 17:33A-7(a), and "shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating [the IFPA]," id. l7:33A-7(b).

Plaintiffs' IFPA claim does not contain any claim-specific allegations of fraud, which identifies with specificity the offending statement, why the statement is false or misleading, and the basis for the claimant's knowledge of its alleged falseness.  There is no claim-by-claim analysis as to the statements made in the billing forms and/or treatment records, or statements as to why the diagnoses/CPT codes were false or exaggerated, and why the treatment/testing administrated was medically unnecessary.  GEICO purports to identify numerous examples of fraudulent claims by Tri-County by attaching a chart to the Complaint as Exhibit 1.  This chart, however, merely provides the provider name, claim number, document type mailed, date received, and amount billed.  There is no explanation of how or why the claims are fraudulent.  These conclusory allegations are insufficient to place Defendants on notice of their precise misconduct.  The IFPA claim must be dismissed for failure to meet the pleading requirements of Rule 9(b).  The Court will, however, dismiss the claim without prejudice and with leave to re-plead, as the deficiencies could potentially be remedied by stating additional and claim-specific factual allegations to support the IFPA claim.

### 2.  RICO Claims—Counts Three and Four

In Counts Three and Four, Plaintiffs allege that Defendants violated 18 U.S.C. §§ 1962(c) and (d).  As to the RICO claims, 18 U.S.C. § 1962(c) provides, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Id.  A properly pled violation of 18 U.S.C. § 1962(c) requires a plaintiff to allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (quoting Lum, 361 F.3d at 223). "Racketeering activity," also known as a predicate act, is defined in the statute at 18 U.S.C. § 1961(1), which lists various state and federal crimes.  A "pattern" of racketeering activity requires the commission of at least two acts of racketeering within a ten-year period.  18 U.S.C. § 1961(5).

In this case, the pattern of racketeering is alleged to consist of mail fraud, in violation of 18 U.S.C. § 1341.  When the predicate acts alleged are mail fraud, a plaintiff must not only plead the elements of mail fraud but must also satisfy the heightened Rule 9(b) pleading standard.  See Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  To state a claim for mail fraud under 18 U.S.C. § 1341, a plaintiff must allege: "(1) the existence of a scheme to defraud; (2) the use of the mails, whether the United States Postal Service or a private carrier, in furtherance of the fraudulent scheme; and (3) culpable participation by the defendant (i.e., participation by the defendant with specific intent to defraud). United States v. Dobson, 419 F.3d 231, 236–37 (3d Cir.2005)).  Rule 9(b) further requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed .R. Civ. P. 9(b).  The plaintiff may accomplish this by "identify[ing] the purpose of the mailing within the defendant's fraudulent scheme and specify[ing] the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." Annulli v. Panikkar, 200 F.3d 189, 200 n. 10 (3d Cir.1999), overruled on other grounds by Rotella v. Wood, 528 U.S. 549 (2000)).  In other words,

Plaintiffs' pleading must contain the "who, what, when and where details of the alleged fraud." District 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 527 (D.N.J. 2011) (quoting Allen Neurosurgical Assoc., Inc. v. Lehigh Valley Health Network, No. 99–4653, 2001 U.S. Dist. LEXIS 284, at *8, (E.D. Pa. Jan.18, 2001)).

Plaintiffs fail to plead the RICO claims with particularity. The Court finds that the RICO claims suffer from the same deficiencies as the IFPA claimThis is insufficient to meet the pleading requirements of Rule 9(b), and Counts Three and Four therefore fail to state a claim. These Counts are dismissed without prejudice and with leave to re-plead.

### 3. Common Law Fraud and Unjust Enrichment (Counts Five and Six)

Under New Jersey law, the five elements of common-law fraud are: (1) a material misrepresentation of a presenting existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. Of Sussex Cnty. v. Whale, 86 N.J. 619, 624-25 (1981)).

With respect to unjust enrichment, the doctrine "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Assocs. Comm. Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986) (citing Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App. Div. 1966)). "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust." County of Essex v. First Union Nat. Bank, 373 N.J. Super. 543, 549-50 (App. Div. 2004) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)), aff'd, remanded by, 186 N.J. 46 (2006).

Plaintiffs' common law fraud claim and unjust enrichment claim are predicated on the same factual allegations pled in support of the IFPA and RICO claims. For the reasons discussed above, the allegations are insufficient to meet the pleading requirements of Rule 9(b). Counts Five and Six are dismissed without prejudice with the opportunity to re-plead.

### IV. CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiffs' declaratory judgment claim with prejudice. The remainder of the claims will be dismissed without prejudice for failure to state a claim upon which relief may be granted. The Court will grant Plaintiffs leave to file an Amended Complaint re-pleading the IFPA, RICO, common law fraud, and unjust enrichment claims. The Court emphasizes, however, that any amended complaint must contain factual allegations focused on individual PIP claims alleged to be fraudulent and not rely on broad conclusory assertions as to the nature of Defendants' alleged misconduct. This opinion supplements the reasoning set forth on the record on November 30, 2015.

Dated: December 4, 2015

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**